# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

CORTEZ T. HODGES,

     Movant,

     v.

UNITED STATES OF AMERICA,

     Respondent.

CIVIL ACTION NO.: 5:17-cv-29

(Case No.: 5:13-cr-15)

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Cortez Hodges ("Hodges"), who is currently incarcerated at the Federal Correctional Institution in Ashland, Kentucky, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence.  Doc. 1.  Respondent filed a Response, doc. 3, to which Hodges filed a Reply, doc. 6.  For the reasons which follow, I **RECOMMEND** the Court **DENY** Hodges's Motion.

## BACKGROUND

Hodges was indicted in this District on charges of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B).  United States v. Hodges, 5:13-cr-15 ("Crim. Case"), Doc. 1.  Hodges' trial counsel, Jared Roberts, filed several pretrial motions, including a motion to suppress evidence seized from Hodges's residence and evidence obtained from a search of a computer and a motion in limine to prohibit evidence of

prior crimes, wrongs, or other acts. Crim. Case, Docs. 16–24. The United States Magistrate Judge conducted a hearing on Hodges's motion to suppress and recommended the motion be denied. Crim. Case, Doc. 39. The Court adopted this recommendation as the opinion of the Court over Hodges's objections. Crim. Case, Doc. 60. The Court also denied Hodges's motion in limine. Crim. Case, Doc. 44. After proceeding to a jury trial, Hodges was convicted of the first three counts of the indictment and acquitted on the obliterated serial number count. Crim. Case, Doc. 82. Mr. Roberts filed a renewed motion for judgment of acquittal and a motion for new trial on Hodges's behalf. Crim. Case, Docs. 90, 91. After a hearing, the Honorable Lisa Godbey Wood denied these motions. Crim. Case, Doc. 112. Judge Wood sentenced Hodges to a total term of 123 months' imprisonment, which was comprised of a term of 60 months as to count 1 (possession with intent to distribute marijuana), a concurrent 63-month term as to count 2 (possession of a firearm by a convicted felon), and a consecutive 60 months' imprisonment as to count 3 (possession of a firearm in furtherance of a drug trafficking offense). Crim. Case, Doc. 119. Hodges filed a notice of appeal. Crim. Case, Doc. 121. Hodges also filed a pro se motion to reduce his sentence, which this Court denied. Crim. Case, Docs. 142, 143.

The Eleventh Circuit Court of Appeals affirmed Hodges's convictions, finding this Court did not err in denying his motion to suppress and motion for acquittal and did not abuse its discretion by admitting evidence of Hodges's prior convictions of marijuana with intent to distribute and possession of a firearm during the commission of a felony. United States v. Hodges, 616 F. App'x 961 (11th Cir. 2015). The Eleventh Circuit also determined this Court did not abuse its discretion in not bifurcating Hodges's trial, in refusing to admit evidence of prior convictions of two convicted felons who had access to Hodges's house, or admitting videos found on a computer and photographs produced from those videos. Id. The Eleventh Circuit

found that, although the Government arguably made an improper remark during closing arguments, such error did not affect Hodges's substantial rights. Id. Hodges filed a petition for writ of certiorari, and the United States Supreme Court denied his petition. Doc. 1 at 2.

In his timely filed § 2255 Motion, Hodges makes several allegations of ineffective assistance of counsel. Hodges contends his trial counsel did not have proper exculpatory witnesses to testify at trial, and he did not challenge the indictment as multiplicitous. Id. at 4. Hodges also contends his trial counsel did not challenge "the scope of the warr[a]nt under the fruit of the pois[o]nous tree" or the illegal search and seizure. Id. Hodges asserts his counsel did not challenge his sentence under Amendment 599 of the Sentencing Guidelines. Id. In addition, Hodges contends his sentence was imposed in violation of Amendment 599 and double jeopardy principles. Id. at 5. Moreover, Hodges maintains his sentence violates the holdings in Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v. United States, 136 S. Ct. 1257 (2016). Id. at 6. The Government responds that Hodges's Motion should be denied.

The Court addresses the parties' contentions in turn.

## DISCUSSION

### I.    Hodges's Ineffective Assistance of Counsel Claims

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient

performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."  Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

A.      **Counsel's Failure to have Proper Exculpatory Witnesses Testify**

Petitioner argues Mr. Roberts failed to interview or call "crucial defense witnesses" during the trial of his case. Doc. 1-2 at 8. According to Hodges, he had three witnesses (Jacqueline Riley, Ronnie Moore, and Jermarol Mizell) who were willing to testify on his behalf, and these witnesses would have "proved" the black bookbag and its contents were not recovered from the property which was the subject of the search warrant. Id. at 8–9. Hodges maintains Mr. Roberts's failure to secure the testimony of these three "very essential defense witnesses" and the owner of the property where he contends the evidence was recovered led to the Court approving the Government's Rule 404(b) evidence. Id. at 9.

In response, the Government states Hodges's attorney was not ineffective for failing to use these three witnesses in support of any suppression motion or during the trial of this case. Doc. 3 at 3. The Government asserts that had the bookbag been located on a lot adjacent to Hodges's lot, as he now contends, Hodges would not be able to challenge the bookbag's seizure or search. In addition, the Government maintains that, despite these witnesses' putative testimony, officers found Mason jars and baggies with marijuana residue in Hodges's bedroom

that matched the Mason jars of marijuana found in the bookbag, as well as ammunition that matched the calibers of three of the four firearms found in the bookbag, connecting Hodges to the bookbag and its contents. Id. at 3–4, n.2. Thus, the Government contends Mr. Roberts was not ineffective for failing to call these three witnesses.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective." Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004). "To show that counsel's conduct was unreasonable, defendant must demonstrate that no competent counsel would have taken the action that his counsel did take." Miranda v. United States, 433 F. App'x 866, 869 (11th Cir. 2011) (citing Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000)). "'It is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented.'" Holt v. United States, No. 2:08-CR-138, 2014 WL 3809108, at *3 (M.D. Fla. Aug. 1, 2014) (quoting Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)).

In support of his assertion that Mr. Roberts was ineffective for failing to call exculpatory witnesses, Hodges submitted affidavits from the three individuals he claims would have provided exculpatory testimony. Hodges's mother, Jacqueline Riley, declared she would visit Hodges "often" at 130 Terrell Road in Douglas, Georgia, and did not observe a black bag containing guns, large amounts of marijuana, or scales, nor did she see Mason jars at the house.[1] Doc. 1-1

---

[1]    It is not known how often Hodges's mother visited him while he resided at 130 Terrell Road. Ms. Riley lived in Albany, Georgia, doc. 1-1 at 8, which is approximately 88 miles form where Hodges lived

at 1.  Ms. Riley also declared she was informed of the property lines when she bought the house.  According to Ms. Riley, had Mr. Roberts called her to do so, she would have testified about what she saw at the house when she visited Hodges and about the property lines.[2]  Id. at 1–2.  Hodges also submitted the affidavits of Ronnie Moore and Jermarol Mizell.  Both Mr. Moore and Mr. Mizell declared they would have testified they never saw a black bag containing weapons, large amounts of marijuana, or scales, and did not see any Mason jars in the house.  Id. at 3, 5.  These two men also declared they would have testified that the "black bag with all the illegal items" did not belong to "any of us."  Id.

In this case, the jury convicted Hodges based on the testimony and evidence presented.  Specifically, Brian Crawford, formerly with the Coffee County Sheriff's Office, testified he encountered marijuana "hundreds of times."  Crim. Case, Doc. 101 at 26.  Mr. Crawford stated he and the other officers on the scene of Hodges's residence conducted a search pursuant to a

_____

in Douglas, Georgia, and it appears Hodges had lived in 130 Terrell Road house for only a few weeks before the search warrant was executed, Crim. Case, doc. 101-1 at 49–50 (testimony of Christina Crosby, the customer service supervisor for Satilla Rural Electric Membership Corporation, revealing that Hodges applied for electric service at 130 Terrell Road on October 12, 2012 and that another person had service in his name until October 9, 2012).

[2]      Hodges attached information about 130 Terrell Road and about the property behind this residence, including what appears to be an aerial map of the properties.  Doc. 1-1 at 7–12.  The Court's review of the map Hodges provided and of information contained on the website from which Hodges obtained this map reveals 130 Terrell Road consists on 0.43 acres, the just over 1300 square feet house at this address is located in the front third of this lot, and there appears to be more than 25 yards between the house and the tree line separating this lot and the adjacent property.  https://qpublic.schneidercorp.com/Application.aspx?AppID=737&LayerID=11775&PageTypeID=1&KeyValue=0117C%20049, search for "130 Terrell Road," last accessed Oct. 25, 2019.  Mr. Crawford testified he was informed the black bookbag was discovered in the backyard of the residence, about 25 yards from the back door.  Crim. Case, Doc. 101 at 32.  The Court also reviewed another website to verify the information Hodges provided.  https://www.google.com/maps/place/130+Terrell+Rd/@31.4878862,-82.8223653,288m/data=!3m1!1e3!4m6!3m5!1s0x88f02bd8e4e1e9ad:0x7903d5823ec29eed!4b1!8m2!3d31.4879306!4d-82.8231837, last accessed Oct. 25, 2019.  Hodges does not provide information as to what exactly his mother would have testified to regarding the property lines, doc. 1-2 at 8–9, nor does Ms. Riley offer that information in her affidavit.  Doc. 1-1 at 1–2.  Based on the information before the Court, there is no information regarding property lines that would have benefitted Hodges in any material way at trial.

warrant, and the K-9 handler told Mr. Crawford the canine had "overwhelming responses in the back right bedroom." Id. at 30. Based on this information, officers began searching that bedroom and discovered identification materials bearing Hodges's name. Id. & at 32. Mr. Crawford testified a shoebox containing Mason jars and Ziploc bags with marijuana residue was discovered in that bedroom, as well as a dollar bill with "DCB" ("Da Cartel Boys") and "Gator" written on it.[3] Id. at 31. Mr. Crawford also testified that while he was searching the bedroom he believed to be Hodges's, another officer told him officers "had located a black book bag . . . just back there in the back yard behind some dogs at the property line, about twenty-five yards from the back door." Id. at 32. Mr. Crawford stated there were three glass jars containing "suspected marijuana[,]" a set of digital scales, and four handguns in that bag. Id. Mr. Crawford asserted that when officers are conducting a search of the outside of a house, they look at the grass to see if somebody had walked on it several times, as his experience and knowledge led him to know that "drug dealers like to hide their stuff outside of their residence[s]." Id. at 45. After officers finished with the bookbag, Mr. Crawford stated the K-9 officer demonstrated a positive odor response on a 1994 Acura, which was in Hodges's name. Id. at 33. A search of the car revealed the presence of a small bag of suspected marijuana and "Apple baggies," which are "commonly used to . . . put marijuana in[,]" in the glove compartment. Id. Mr. Crawford testified he then went to finish his search in the bedroom believed to be Hodges's and found a small amount of marijuana in a plastic bag, a grinder, which Mr. Crawford described as a device "commonly use[d]" to grind up marijuana before it is smoked, a set of digital scales, "some .38 revolver bullets," and another plastic bag with what appeared to be marijuana residue. Id. at 34–35. In another room, Mr. Crawford discovered an open laptop with an external hard drive and a thumb

---

[3] Crawford stated Hodges "was known to be affiliated with[]" "Da Cartel Boys" and that "Gator" is Hodges's alias. Crim. Case, Doc. 101 at 31.

drive.  Id. at 35.  The Government tendered 64 exhibits detailing Mr. Crawford's testimony into evidence and the defense tendered three defense exhibits, which the Court admitted without objection.  Id. at 48–50; Doc. 101-1 at 1–6, 12.

In addition, Detective James Hersey, the evidence custodian for the Coffee County Sheriff's Office and a certified expert on marijuana identification, tested the recovered materials believed to be marijuana in this case.  Doc. 101-1 at 17.  Detective Hersey testified that the results of the tests he ran were that the material inside the packages depicted in the Government's trial exhibits tested positive for marijuana, the material appeared to be marijuana, and the odor from that material is associated with marijuana.  Id. at 18.

Agent Anthony Banks with the Georgia Bureau of Investigation testified he was asked to conduct a search of an HP computer and external hard drive believed to be Hodges's based on the second search warrant obtained in this case.  Crim. Case, Doc. 101-2 at 6–7.  Agent Banks stated he conducted a key word search for "marijuana" on these devices, which yielded 53 images, 27 videos, and approximately 25 pages of data.  Id. at 7.  Agent Banks described the videos as "rap videos where [Hodges] was, at times, brandishing guns and showing money . . . ." Id.  The Government played three of these videos to the jury.  Id. at 14.  Judge Wood provided a limiting instruction to the jury that they could not consider evidence of similar acts Hodges may have committed to determine whether Hodges committed the acts charged in the indictment; however, the jury could use that evidence to decide whether Hodges had "the state of mind or intent necessary to commit" the charged acts or committed the charged acts by accident or mistake if the jury were to find beyond reasonable doubt from other evidence Hodges committed the charged acts.  Id. at 15–16.

The Government presented testimony and evidence from the police officers who conducted the search of Hodges's residence, car, and the laptop and external hard drive believed to be Hodges's. This evidence revealed that marijuana and materials associated with its distribution were recovered from Hodges's bedroom and car and that evidence of Hodges having possession of a firearm, despite his status as a convicted felon, and using firearms in connection with his drug trafficking offense was recovered as a result of the search of Hodges's property and computer. In fact, Hodges raised sufficiency of evidence arguments on appeal, and the Eleventh Circuit determined sufficient evidence was produced at trial to support Hodges's convictions on all three counts. Hodges, 616 F. App'x at 967–69. Additionally, the Eleventh Circuit stated the evidence obtained from Hodges's house matched that found in his backyard in the bookbag such that a reasonable jury could infer his possession of firearms. Id. at 968. The Eleventh Circuit also noted this Court did not abuse its discretion in admitting 404(b) evidence, as Hodges placed his intent at issue with respect to the drug offense, and his prior conviction on a weapons charge made "it more likely Hodges intended to exercise control over those guns." Id. at 965.

Mr. Roberts was not ineffective for failing to call these three individuals as witnesses during the trial of this case. Even if Mr. Roberts had called these three witnesses to testify during Hodges's criminal trial, Hodges cannot show that he was prejudiced by the failure to call these witnesses.[4] At most, the testimony of these witnesses would have presented credibility determinations for the jury, as these witnesses declared they were willing to testify they did not see a black bag, weapons, or drug paraphernalia at Hodges's residence for the very short period of time Hodges resided at 130 Terrell Road, not that the drug paraphernalia and weapons were

---

[4]     The Court's ability to evaluate Hodges's claims of ineffective assistance is made more difficult—though not impossible—due to the Government's failure to provide the Court with an affidavit from Mr. Roberts. Indeed, the Government's Response consists of eight substantive pages and a two-page affidavit offered in support of the search warrant obtained during the underlying investigation.

not Hodges or belonged to another person. Doc. 1-1 at 1–6. Even considering Messrs. Moore and Mizell's statements that they would have testified the black bookbag did not belong to "any of us" as disclaiming ownership of the black bookbag on Hodges's behalf, this testimony would not have necessarily exculpated Hodges. As detailed above, the Government presented evidence and testimony that the jury found, beyond a reasonable doubt, that the weapons and drug paraphernalia—regardless of where they were discovered—belonged to Hodges. There was ample evidence of Hodges's guilt from which a jury could conclude beyond a reasonable doubt that Hodges was guilty of committing three of the four charged offenses. See Fortenberry v. Haley, 297 F.3d 1213, 1228–29 (11th Cir. 2002) ("It is worth reiterating that the absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt. . . . In this case, although there was no conclusive forensic or eyewitness evidence establishing Fortenberry's guilt[], the jury had before it Fortenberry's multiple uncoerced confessions, along with strong evidence that placed him in possession of the murder weapon. We find that [there is] no reasonable likelihood that the jury would have discredited this evidence had it heard the testimony Fortenberry says his lawyers should have discovered and presented.").

Because there was ample evidence presented for a jury to conclude Hodges was the owner of the black bookbag and its contents, Mr. Roberts cannot be said to have rendered ineffective assistance of counsel in failing to call the three witnesses Hodges wished. The Court should **DENY** this portion of Hodges's Motion.

**B.     Counsel's Failure to Challenge the Indictment**

Hodges asserts the possession of a firearm by a convicted felon offense and the possession of a firearm in furtherance of a drug trafficking offense should have been merged because both counts involved the same firearm. Doc. 1-2 at 5. Hodges alleges Mr. Roberts violated his Fifth Amendment right against double jeopardy by not challenging Hodges being charged with multiplicitous counts in the indictment. Id. at 5–6.

The Government argues the test to apply to determine whether multiple counts of an indictment constitute one or two offenses is whether each provision requires proof that the other does not. Doc. 3 at 4. In this regard, the Government states the §§ 922(g) and 924(c) offenses each required proof of a fact the other offense did not, and Mr. Roberts cannot be considered to have rendered ineffective assistance for failing to make a meritless argument. Id. at 5.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. "The Double Jeopardy Clause protects a defendant from (1) a second prosecution for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple punishments for the same offense." United States v. Melvin, No. 3:14-CR-00022, 2015 WL 7116737, at *11 (N.D. Ga. May 27, 2015), *report and recommendation adopted*, 143 F. Supp. 3d 1354 (N.D. Ga. 2015), *aff'd*, 918 F.3d 1296 (11th Cir. 2017) (citing Jones v. Thomas, 491 U.S. 376, 380–81 (1989)). If more than one count of the indictment requires proof of a fact that the other did not, neither count is subject to dismissal based on the existence of some common facts. See Blockberger v. United States, 284 U.S. 299, 304 (1932) (holding "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof

of a fact which the other does not.").  "Ultimately, the 'dispositive question' [in the <u>Blockburger</u>

analysis is] whether Congress intended to authorize separate punishments for the two crimes.'"

<u>United States v. Gonzalez</u>, 834 F.3d 1206, 1219 (11th Cir. 2016) (quoting <u>Albernaz v. United

States</u>, 450 U.S. 333, 344 (1981)).  "Trial counsel's failure to make a meritless argument is not

ineffective assistance of counsel."  <u>United States v. Hirmer</u>, No. 3:08CR79, 2018 WL 4625652,

at *12 (N.D. Fla. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4621822 (N.D.

Fla. Sept. 26, 2018).

Hodges was charged with and convicted of possession of a firearm by a convicted felon,

in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug

trafficking offense, in violation of 18 U.S.C. § 924(c).  Crim. Case, Docs. 1, 82, 119.  In order to

obtain a conviction under § 922(g)(1), the Government had to prove Hodges had "been convicted

. . . of[] a crime punishable by imprisonment for a term exceeding one year[]" and that Hodges

"possess[ed] in or affecting interstate commerce[] any firearm or ammunition[.]"  18 U.S.C.

§ 922(g)(1).  To prove Hodges's culpability under § 924(c), the Government had to prove

Hodges was involved in a separately prosecutable drug trafficking crime, and "during and in

relation to" that drug trafficking offense, he "use[d] or carrie[d] a firearm" "in furtherance of"

the drug trafficking offense.  18 U.S.C. § 924(c)(1)(A).  Even if these two offenses involved the

same firearm, as Hodges maintains, they were charged and proven separately.  Each offense

required proof of prerequisites that the other did not.  Namely, the Government had to prove

Hodges was a convicted felon and possessed a firearm or ammunition under § 922(g)(1).  In

contrast, the Government had to prove Hodges committed a drug trafficking offense and that he

used or carried a firearm during that offense under § 924(c)(1)(A).  It is evident these two

statutes charge separate offenses, and to obtain convictions under both statutes, the Government

had to prove different facts as to each charged offense. Hodges's double jeopardy argument to the contrary—presented under the guise of ineffective assistance—is unavailing. Had Mr. Roberts raised this issue at trial, it would have been denied. Hirmer, 2018 WL 4625652, at *12 ("Trial counsel's failure to make a meritless argument is not ineffective assistance of counsel."). Accordingly, the Court should **DENY** this portion of Hodges's § 2255 Motion.

### C.    Counsel's Failure to Challenge the Scope of the Warrant/Illegal Search and Seizure

Hodges contends the search warrant issued was "only for the scope of the property of that being 130 Terrell Road, Douglas, Georgia, the petitioner's place of residence." Doc. 1-2 at 7. Hodges contends the evidence law enforcement officials recovered was located at 2290/601 Sycamore Street, and the owner of that property did not consent to a search of his property, nor was even contacted to obtain consent. Id. Hodges maintains that had Mr. Roberts listened to him, Mr. Roberts would have looked into the property lines involved and would have learned the evidence used against Hodges was obtained through an illegal search and seizure. In addition, Hodges asserts the evidence recovered as a result of the illegal search was fruit of the poisonous tree. Id. Hodges also asserts the property where the evidence was found was not 130 Terrell Road and was "out of the protective sweep doctrin[e]." Doc. 6 at 2.

"To have standing to challenge a search, one must manifest a subjective expectation of privacy in the invaded area that 'society is prepared to recognize[] as reasonable.'" United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting Rakas v. Illinois, 439 U.S. 128, 143 & n.12 (1978)). A person's subjective expectation must be objectively "justifiable under the circumstances." Id. (internal citation omitted). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Brown v. United States, 411 U.S. 223, 230 (1973); Simmons v. United States, 390 U.S. 377, 389 (1968). "A

person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 133–34 (1978).

Law enforcement officials were authorized to conduct a search of "[t]he entire premises, including curtilage, outbuildings[,] and all vehicles located at: 130 Terrell Road, Douglas, GA[.]" Doc. 3-1 at 2. As part of this authorized search, law enforcement officials found a black bookbag containing firearms, Mason jars of marijuana, and a digital scale down a worn path in the backyard. Doc. 3 at 3 (citing Pre-Sentence Investigation Report, "PSR," ¶ 6). If, as Hodges asserts, this bookbag was discovered on adjacent property, he would not have standing to challenge the search and ultimate recovery on another person's property. Rakas, 439 U.S. at 133–34 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Thus, there would be no violation of Hodges's Fourth Amendment rights.[5] In other words, had it been uncovered that the bookbag was, indeed, found on property adjacent to Hodges's residence, the Fourth Amendment rights of the owner of that property would have been implicated, not Hodges's. Additionally, as discussed above, Hodges presents no evidence that would reveal the bookbag and its contents were not discovered within the boundary of 130 Terrell Road. And the Eleventh Circuit, in upholding this Court's judgment of conviction, considered the bookbag and its contents to have been recovered from the backyard of 130 Terrell Road. Hodges, 616 F. App'x at 946–69. Mr. Roberts cannot

---

[5]     The Government conflated Hodges's assertions of ineffective assistance of counsel relating to the exculpatory witnesses' testimony and Hodges's standing claims. While the Court does not fault the Government for responding in this manner given the relationship between these claims, the Court has opted to address these claims separately.

be said to have rendered ineffective assistance for failing to raise this issue, and the Court should

**DENY** this portion of Hodges's § 2255 Motion.

## II.     Hodges' Sentence Under Amendment 599 of the United States Sentencing Guidelines[6]

Hodges contends his sentence should be vacated, as Amendment 599 of the Sentencing Guidelines was violated and resulted in "double counting." Doc. 1-2 at 14. Specifically, Hodges states his charged offenses under 18 U.S.C. §§ 922(g)(1) and 924(c)(a)(2) did not authorize multiple convictions because his single use of a gun supports only one § 924(c) charge.

The Government alleges the Court's sentence was made in full compliance with Amendment 599. Doc. 3 at 5. The Government asserts the Court calculated Hodges's possession of marijuana with intent to distribute offense without the specific offense characteristic based on a firearm and his offense of possession of a firearm by a convicted felon without any enhancement under § 2K2.1(b)(6)(B).[7] Id. at 5–6.

"Amendment 599 was enacted to clarify under what circumstances a weapons enhancement may be applied to an underlying offense when the defendant has also received an 18 U.S.C. § 924(c) conviction, which provides separate punishment for the use or possession of a firearm in a violent crime."[8] United States v. Pringle, 350 F.3d 1172, 1176 (11th Cir. 2003)

---

[6]     Hodges also makes this argument under the ineffective assistance of counsel umbrella, but the Court addresses this contention separately as an underlying enumeration of error. If Hodges does not show his sentence violates Amendment 599, his attorney could not possibly have rendered ineffective assistance in failing to raise any argument relating to this Amendment.

[7]     The Sentencing Guidelines call for a four-level increase in criminal history points if the defendant "used or possessed any firearm . . . in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B).

[8]     As amended by Amendment 599, Application Note 2 states:

If a sentence under this guideline [i.e., 18 U.S.C. § 924(c)] is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the

(citing United States v. White, 305 F.3d 1264, 1266 (11th Cir. 2002), and U.S. Sentencing

Guidelines Manual supp. to app. C at 70 (2002)). "Amendment 599 addresses the circumstances

under which a court may impose a weapons enhancement on a defendant who was convicted of

an 18 U.S.C. § 924(c) firearms offense." Johnson v. United States, No. CR414-346, 2016 WL

6915319, at *1 (S.D. Ga. Oct. 31, 2016), *report and recommendation adopted*, 2016 WL

6909110 (S.D. Ga. Nov. 23, 2016). "Amendment 599 provides that, where a defendant is

convicted of an 18 U.S.C. § 924(c) crime for using a firearm during and in relation to a crime of

violence or a drug trafficking crime, the defendant cannot also receive a base-offense-level

enhancement in the underlying offense for his use of a firearm during the commission of that

offense." United States v. Brown, 332 F.3d 1341, 1344–45 (11th Cir. 2003). "The purpose of

Amendment 599 is to clarify under what circumstances defendants sentenced for violations of 18

U.S.C. § 924(c) may receive weapon enhancements contained in the Guidelines for those other

offenses." United States v. Garcon, 580 F. App'x 767, 769–70 (11th Cir. 2014).

"Impermissible double counting occurs only when one part of the Guidelines is applied to

increase a defendant's punishment on account of a kind of harm that has already been fully

accounted for by application of another part of the Guidelines." United States v. Dudley, 463

F.3d 1221, 1226–27 (11th Cir. 2006). "Double counting a factor during sentencing is permitted

---

sentence for the underlying offense. A sentence under this guideline accounts for any
explosive or weapon enhancement for the underlying offense of conviction, including any
such enhancement that would apply based on conduct for which the defendant is
accountable under § 1B1.3 (Relevant Conduct). Do not apply any weapon enhancement in
the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the
jointly undertaken criminal activity, possessed a firearm different from the one for which
the defendant was convicted under 18 U.S.C. § 924(c); or (B) in an ongoing drug
trafficking offense, the defendant possessed a firearm other than the one for which the
defendant was convicted under 18 U.S.C. § 924(c).

United States v. Pringle, 350 F.3d 1172, 1179 (11th Cir. 2003) (quoting U.S. Sentencing Guidelines
Manual § 2K2.4, cmt., n.2, amend. 599 (2000)).

if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." Id. at 1227. "'Absent a specific direction to the contrary," courts presume "the Sentencing Commission intended to apply separate sections cumulatively,' and, as a result, a defendant asserting a double counting claim has a tough task." United States v. Webb, 665 F.3d 1380, 1382 (11th Cir. 2012) (quoting United States v. Kapordelis, 569 F.3d 1291, 1315 (11th Cir. 2009)).

In this case, the United States Probation Office submitted a PSR to the Court and to counsel in anticipation of the Court's sentencing hearing after Hodges's jury trial and convictions. The Probation Officer recommended that Hodges's base offense level for his § 922(g)(1) conviction be set at 20 under U.S.S.G. § 2K2.1(a)(4)(A). PSR, ¶ 22. The Probation Officer also recommended Hodge receive a 2-level increase because this offense involved 4 firearms under U.S.S.G. § 2K2.1(b)(1)(A) and a 4-level increase because this offense involved possession of a firearm after having at least one other countable felony conviction for a controlled substance under U.S.S.G. § 2K2.1(b)(4)(B).[9] PSR, ¶¶ 23, 24. However, the Probation Officer stated he did not include an offense-level enhancement under § 2K2.1(b)(6)(B) because Hodges was also convicted under § 924(c) and noted that Hodges's § 924(c) conviction could not be grouped with any other conviction. Id. at ¶¶ 15, 17, 25 (assessing no enhancement for specific offense characteristic of possession of firearm during commission of another felony offense because Hodges was convicted under § 924(c) and citing to U.S.S.G. § 2K2.4, cmt. n.4). The Probation Officer further noted Hodges's conviction under § 924(c) resulted in a Guidelines'

---

[9]     Section 2K2.1(a)(4)(A) calls for a base offense level of 20 if the defendant committed any part of the charged offense after having received one felony conviction for either a crime of violence or a controlled substance offense. Under § 2K2.1(b)(1)(A), a defendant faces a 2-level increase if the offense involved 3 but less than 7 firearms. Finally, § 2K2.1(b)(4)(B) calls for a 4-level increase if any of the firearms had an altered or obliterated serial number.

sentence of the statutory minimum under U.S.S.G. § 2K2.4(b), which was five years' imprisonment, but did not apply "Chapters Three and Four" to that count of conviction.[10] Id. at ¶ 34.

Mr. Roberts objected to the two- and four-level increases under paragraphs 23 and 24 of the PSR by stating only one or two firearms should have been attributable to Hodges because others had equal access to the firearms. Crim. Case, Doc. 131 at 6–7. Judge Wood noted the jury had rejected counsel's equal access assertion, a rejection she found to be proper by a preponderance of the evidence, and overruled this objection. Id. at 8. Judge Wood concurred with the Probation Officer's application of the Guidelines, found Hodges's offense level to be 26 and criminal history category of III, and determined the Guidelines' range was 78 to 97 months' imprisonment on the §§ 841(a) and 922(g)(1) convictions, plus a consecutive 60 month-sentence on the § 924(c) conviction. Id. at 14. Before pronouncing sentence, Judge Wood noted she considered and applied the 18 U.S.C. § 3553 factors and studied the PSR. Id. at 31. She imposed a sentence below the advisory Guidelines' range for Hodges's §§ 841(a) and 922(g)(1) convictions by imposing concurrent terms of imprisonment of 60 and 63 months' imprisonment, respectively, but was statutorily required to impose a 60-month consecutive sentence on Hodges's § 924(c) conviction. Id. & at 32.

Hodges did not receive a base level offense enhancement under the Guidelines for his § 924(c) conviction. Thus, Hodges' sentence was rendered in accordance with Amendment 599. Hodges received a statutorily required consecutive sentence for his § 924(c) conviction, and no "double counting" under the Guidelines occurred. Because Hodges cannot show the Court's

---

[10]     Chapter Three of the Guidelines concerns adjustments, such as determining an offense level when multiple counts are involved, and Chapter Four concerns criminal history. U.S.S.G. (2013).

sentence violated Amendment 599, by extension, he was not prejudiced by any failure of Mr. Roberts to raise this specific issue.  The Court should **DENY** this portion of Hodges's Motion.

**III.** **Johnson/Welch Claims**

Hodges alleges his sentence under §§ 924(a) and (c) is unconstitutional based on the holdings of Johnson and Welch.  Doc. 1-2 at 15.  The Government responds that, even if Johnson applied to § 924(c) convictions, that decision would not support the relief Hodges requests.  Doc. 3 at 6.  Instead, the Government notes Hodges's predicate § 924(c) offense was a drug trafficking crime, not a crime of violence.  Id. at 7.  The Government argues the Johnson decision (and, by extension, the Welch decision) has no effect on Hodges' § 924(c) conviction.

Under the Armed Career Criminal Act ("ACCA"), any person who violates 18 U.S.C. § 922(g) and has on three or more occasions been convicted for a "serious drug offense" or "violent felony" will receive a mandatory minimum sentence of fifteen years' imprisonment.

18 U.S.C. § 924(e)(1).  In Johnson, the Supreme Court explained that the ACCA:

> defines 'violent felony' as follows: 'any crime punishable by imprisonment for a term exceeding one year . . . that—'(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.'* § 924(e)(2)(B) (emphasis added).  The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555–56.  The Court held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process."  135 S. Ct. at 2563. However, the Court also emphasized its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id.  The United States Supreme Court made the Johnson decision retroactively applicable to defendants seeking collateral review.  Welch, 136 S. Ct. at 1257.

Hodges was not convicted or sentenced under § 924(e), or the ACCA, and did not receive a mandatory minimum sentence of 15 years in prison.  Instead, Hodges was convicted under §§ 841, 922(g), and 924(c) and received a total sentence of 123 months' imprisonment.  Accordingly, Johnson and Welch do not apply here, and Hodges is not entitled to any relief based on these decisions.  Even if the Johnson and Welsh decisions applied to cases involving convictions under § 924(c), Hodges still would not be entitled to the relief these cases could provide.  The ACCA's residual clause is applicable to situations in which the predicate offenses are violent felonies within the meaning of the ACCA.  In Hodges's case, his predicate offense under § 924(c) involved a drug trafficking offense, not a crime of violence.  Doc. 3 at 7; PSR ¶ 45.  Thus, the Court should **DENY** this portion of Hodges's § 2255 Motion.

## IV.    Hodges's Request for Evidentiary Hearing, Doc. 1-2 at 16

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Hodges's claims lack merit as a matter of law or are otherwise affirmatively

contradicted by the record, no evidentiary hearing is necessary. Consequently, the Court **DENIES** Hodges's request for an evidentiary hearing.

## V. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Hodges leave to appeal *in forma pauperis*. Though Hodges has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Hodges's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Hodges a Certificate of Appealability, Hodges is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

# CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Hodges's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Hodges a Certificate of Appealability and *in forma pauperis* status on appeal. The Court **DENIES** Hodges's request for evidentiary hearing.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Hodges and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of October, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA